Alcoa Power Generating, Inc. Alcoa Power Generating, Inc. I'm Bob Moore, along with my co-counsel Eddie Green. We're joined at the council table by Wright Longest, who represents the Yadkin Riverkeeper, one of the amici in this case.  Mr. Green will handle the rebuttal. Your Honor, the trial court erred below in denying the state's motion to remand this case back to state court, because this is purely a case of state law. This was a declaratory judgment action under North Carolina general statutes, originally filed in the Superior Court of North Carolina. Why is this a federal question that deals with the constitutional sovereignty of the states? Your Honor, that lies at the very heart of this issue, and the distinction goes back to the historical difference and the legal difference between the status of the original 13 states and four later states, and the states that were subsequently admitted to the Union after the adoption of the United States Constitution. Some of the over-navigable waters, both navigable and non-navigable, for the original 13 states was created by the Declaration of Independence, the break from the British government, the adoption of the state constitution, and in the case of North Carolina, that was 1776. North Carolina was created in 1776? That's correct, Your Honor. In July? The Declaration of Independence separated the state from the British Crown. In December of 1776, the North Carolina Constitution was adopted, and North Carolina, as each of the other 12 original colonies, gained independence as a sovereign entity. Was it called a state at that point, 1776? Or do you know? Actually, I think it would be described as a state, Your Honor. I think at the very end they referred to the colonies as states. I may be wrong. This is Jefferson's blackboard. Your footnote in your recovery calls it the state constitution. It was. In 1776. I wouldn't agree with me asking whether it was a state. It certainly was a state in 1789. It became a state of the Union in 1789. It did, Your Honor. But there were 13 years in between the Declaration of Independence and the Constitution. As a matter of fact, North Carolina, I recall, was the tail end. They made it. They approved it all. They were the 12th. They were the 12th state in November of 1789. That is correct. North Carolina ratified the Constitution. That is correct. Is there a more relevant date than 1776 in terms of the inquiry on what's a federal question and what's the constitutional indication? No, Your Honor. Your Honor, if I can explain, here's the distinction. When North Carolina in 1776, along with the other 12 original states, became sovereign, they took title to all of the properties within the bounds of the state, including rivers, both the navigable portions and the non-navigable portions. And the Constitution says water. That's correct. It took the water. To be held by them in sovereignty. That is absolutely correct, Your Honor. That's what they said in 1776. Was that Constitution in effect until 1789? The state Constitution has been in effect. That Constitution, that provision is still there. Yes. It didn't go anywhere in 1789. No, Your Honor. It certainly didn't. And the distinction is – Who owned the Atkin River in 1789 when you became a state of the union? Well, if I could step back and ask the question, who owned the Atkin River, both the navigable and non-navigable portions, in 1776? Well, I didn't qualify. I said, who owned the Atkin River? That would cover the whole thing, from Blooming Rock to the state line, or where it turned into the PD. In 1789, when North Carolina entered the union on ratifying the Constitution, it still owned the Atkin River, both navigable and non-navigable portions. Let's stop right there. The navigable is pretty clear. I mean, the Supreme Court and Martin Lessie talked about the navigable waters that you owned at the time of the Revolution in North Africa. My question is, what about a farm with no water on it in North Carolina that was owned by, in the early 1720s, somebody settled it and took deeds somehow? Do they still own that farm in 1776? It's my understanding that proper transfer of title from the crown to a private citizen still was in effect when North Carolina became a sovereign state in 1776 Your proposition is in that farm, owned by the Smith family for generations before 1776, was owned by North Carolina when it declared independence? No, Your Honor. I misspoke, if that was your understanding. No, the private citizen on a proper title transfer from the crown in 1720, the private citizen would own, not the state of North Carolina. That's right. Now, that raises the question that underlies Judge King's question to you, is what, as an act, when the state became sovereign, what sovereign rights attached to the state? And I thought the Supreme Court and Martin Lessie said the navigable waters became state property as an act of sovereignty. I'm now reading, because it would cease to be a matter of much interest in the United States, oh, that's the earlier, that's before the revolution. When the revolution took place, the people of each state became themselves sovereign, and in that character hold the absolute right to all their navigable waters and the soils under them. Now, that is what the Supreme Court relied on later in Montana to address these issues. Yes, and I haven't articulated the distinction for the later admitted states. No, let's look at the later admitted states. Let's stay with this. It's very important because that raises all kinds of new issues. But the point is Martin Lessie doesn't talk about non-navigable. It talks about navigable. You've talked about both. And my question is, every landowner in North Carolina has a title going back before the revolution. Correct. And those people were never in any way denied ownership to the land. And many of those parcels of land had creeks on them, streams, wells, springs, non-navigable waters. And those became the ownership of the people. What went to the sovereign, according to the Supreme Court, was the navigable waters and the land under navigable waters. Leave it open what navigable meant. Correct, Your Honor. The critical point is, and I think I'm going to sneak because my time is running quickly here, the later admitted states. And the reason it's a federal question for them is because they were created pursuant to Article 4, Section 3 of the U.S. Constitution, authorizing Congress to create new states out of the territory. So there's a constitutional component. But as all of the cases, particularly Montana, the state of Utah case, the distinction between navigable and non-navigable is, for later admitted states, the federal government retained title to non-navigable waters in later admitted states. But as to navigable waters, the same rights apply. Exactly. Which meant that the Doctrine of Navigability had to be in place long before this Equal Footing Doctrine came about. Which brings you back to the initial question dealing with remand, among other things, is in 1788 or 89, depending on the state, what happened at that point when that state ratified the Constitution and joined the Union? What sovereign rights did it retain? What sovereign rights did it give up with respect to navigable waters? And, Your Honor, I would say the original 13 states, and this would also include West Virginia, which is an exception, the states retained everything it had from 1776 forward. And you're saying non-navigable and navigable. And that's what Judge Gilliam said in that Swan Island case in 1953 that we affirmed. And he distinguished, he explained what could happen to non-navigable and what could happen to navigable by way of conveyances and alienation and grants and stuff. Don't you worry about those lights. We've probably got a lot of questions about this. That's my view of it. This is a complex situation. But anyway, what's the impact of that opinion of Judge Gilliam's that was upheld here by Judge Parker and his colleagues in 1954? Your Honor, I think it is. You cited reliability. Other people cited reliability. Is that good law in the Fourth Circuit? It is. It's precedent in the Fourth Circuit. It is, Your Honor. And I think you would have to look at taking the argument advocated by Alcoa in this case to its logical extension. If the rule applies in all 50 states, then the question is who owns non-navigable waters? There is no question under Montana and all of the cases out there that for later admitted states, non-navigable ownership is retained by the federal government. That's an equal footing doctrine. Does it apply to the original states? The original 13 in your answer, you say no. That's correct, Your Honor. And they say yes. So you say now, that's where the issue joins up. The law of sovereignty under the Constitution that the rights that the states have are different for the original 13 than the other 37. In other words, the whole principle of equal footing was to have equal sovereignty under the Constitution. Now, under your construction, you're suggesting that 37 states have the right to find in Montana and that the 13 have the right to find by the state, which means that the state, somebody contesting a river right in Massachusetts, goes to state court and applies a different law, maybe the Montana law, than a person in Indiana who has to apply federal law. That, to me, just undermines the whole purpose for the equal footing doctrine. May I explain it? I might have to let the court stand, but obviously there are a lot of questions. You're going to get a lot of questions. All right. You're going to get a lot of questions. I'm delighted. I'm happy to answer your questions. This is a hot court today. The equal footing doctrine does, in fact, apply. It's a broad principle that says newly admitted states, after the Constitution was adopted, the union forum, the newly admitted states have to be on an equal footing with the original 13. And in regard to navigable rivers, they are. The states in the original 13 only control the navigable waters. But the definition of a navigable river, Montana defined it differently. They didn't accommodate portages and segments. And the Supreme Court said, as a matter of U.S. constitutional law, navigable has to include the doctrines of segmentation and portages. Now, you're saying Massachusetts can decide that they want to exclude portages and navigation and say we want title to the entire river. Now, what you have is a Supreme Court holding about navigability, and you're saying it only applies to 37 states. That is a very strange problem. Your Honor, what I'm trying to articulate is on the question of is this a federal question. Because the answer, I think, I can interject here, is that the equal footing doctrine deals with the new states provision. And it applies to the new states. And the original 13 are not new states. They're different. They're different. And North Carolina came in and owned it. Do you agree that the purpose of the equal footing doctrine was to make the states equally sovereign under the Constitution? Yes, Your Honor. Okay. So if you now apply the equal footing doctrine to make them unequal, there's something perverse about that. And if I may give this example to the Court's consideration. If that theory is correct, and it certainly is correct in the context of ownership of navigable rivers or navigable segments of rivers, the same rights abide in the new states as in the original 13. But one has to agree it's a federal question as to what is a navigable stream. Yeah. In the 37, absent the four exceptions, because one, they were created by the Constitution. And two, titles. What were the other 13? The other 13 were created under the Constitution. That's the whole basis for the equal footing doctrine. Because when they came in, they owned the non-navigable waters and the navigable waters. That's the difference. The question is what happened when they joined the Union, which is what would seem makes this a federal question of constitutional dimension. What did those 13 states retain and what did they surrender? And this is, if you carry the argument of Alcoa to its logical conclusion, we know for a fact, Montana sets this out with great clarity, that in later admitted states, of which Montana was one, the state government got the navigable segments and the federal government kept the non-navigable segments. Well, Martin Slessee said that 100 years earlier. Martin Slessee says the states got, as a matter of sovereignty, the navigable waters and the land under it. And that was when they joined the Union. But under the original 13, the non- That's addressing the original 13. Yes, sir. The critical distinction I'm trying to make is that when the states, as Judge King has articulated, when the 13 states came into the Union, they owned navigable and non-navigable stretches. And the stretch that issued- What if you just told me that a farmer with a stream went through his field? He owned the land and the stream, right? Your Honor, I think your example was that he owned a farm and that the stream was navigable- No, no, non-navigable. Non-navigable. A three-foot stream going through his farmland. He owned that. If he had a deed that included that- However he got it, but he was the declared owner. You're suggesting when he became a state, that stream went to the state? No, Your Honor, I am absolutely not suggesting- Not if the Crown had conveyed it to him before the state was created. But if the Crown hadn't conveyed it to him, North Carolina got it. So state- which were subject to the public trust doctrine and could not be alienated, could not be granted, and could not be conveyed, except in the Supreme Court of North Carolina in that Gwatney case said, by a legislative grant that is specific, they might be able to do it as to what water is subject to the public trust doctrine. So you agree with that proposition that the non-navigable waters could be conveyed? Yes, Your Honor. They could be conveyed. North Carolina passed an act, the Markable Title Act, that said after so many years of demonstrated title, you have good title to the land. So somebody comes into court and says, I have a stream through my farm and my deeds going back 50 years show that I have a stream going through my farm and I own all this land. That person owns that land and the stream, right, in North Carolina. I believe that would be correct if I followed your- So even if that title belonged to the state someplace way back, and you can't identify the grant, the legislature, the people of North Carolina have said, if you can demonstrate title to the stream and the farm going back, what's it, 50 years or whatever it is? 35 years. The Markable Act. I think it's 30. 30-something, yeah. All right. If you can do that, then you've got good title to the stream and the farm, right? I believe that would be correct. Would it have to be a non-navigable stream or a portion thereof to be able to be conveyed by deed? It says, the Supreme Court of North Carolina says if it's the subject to the public trust doctrine, which Judge Gilliam said, is the navigable water, it has to be by legislative act, specific act for the legislature of North Carolina. Let's agree with that. Go forward a little bit. That the streams that are non-navigable could be conveyed or protected by the marketing act, a good marketing act, and the navigable waters could not be conveyed except by some special arrangement. Right. So the question in this case, then, is whether the 45-mile segment is navigable or non-navigable. Is that fair enough? Your Honor, we would say that the application of the navigability rule by Judge Boyle was not properly applied. But this is my proposition. Forget Judge Boyle's reasoning. It may or may not be how we look at it. He said 42 miles was navigable. I think three miles was non-navigable. Let me get my question. I mean, you can't cover 45 and 42 are non-navigable. My question is, is the segment involved in this case, whether it's 42, 45, whatever it is, 45 miles. There's a 45-mile segment, but 42 of them he said were navigable. Let me get my question. My question is if that is properly determined to be non-navigable, then it's subject to the market act. If it's determined to be navigable, then it could not have been conveyed because it was in the public trust. Does that sound right? I think that would be correct. But the fact that it's determined non-navigable and we would submit, that's a question. That's the next question. That's the next question. But to get the underlying principles, in other words, ALCOA claims this is non-navigable and claims they have title to this because they have demonstrated title going back 100 years. And so that satisfies the act. If it in turn is navigable, then what Judge King suggests sounds right to me. It's part of the public trust and you'd have to have some kind of debate. So then you get to the question, okay, navigability for title was decided in Montana. If Montana applies only to the 37 states, then we have to re-argue that issue. But now you have to be arguing that we have a Supreme Court case that applies only to 37 states. The substance of it, 37 states and the 13 states, Supreme Court opinion doesn't apply. Your Honor, if I may, and you all have been very kind in giving me an argument. Don't you worry about that red light. We haven't heard of that. We want to talk. Your Honor, if I could read one quote from U.S. v. Utah, the 1931 Supreme Court case, which was relied on by the court in Montana. And then go to that. Just answer one question first. Your argument has to hold that Montana applies only to the new states and not to the 13th. It articulates the principle that applies to the 13th. There's a substantive ruling. They took jurisdiction under the equal footing. Why don't you just say yes? All right. Good thing I'll say yes. So now we have a Supreme Court case. Never in the history of this country have we had a Supreme Court case where the substance of the whole thing applies only to 37 states and the principle is inapplicable everywhere else where the facts are. Well, the answer would be that the Supreme Court can't take away the property of a sovereign state of North Carolina that they got and kept when they went into the Union in 1789 and that they got in 1776 and then fought a revolution over. Yes. And the key in understanding Montana is that the state of Montana contended that the segmented issue in the Montana case was navigable and therefore they claim the whole river was navigable regardless of portages or segments from bottom to top. And they said it's all navigable because most of the river was navigable. And the Supreme Court said they erred on both points. And the point, this is really sort of factual key to Montana. The state claimed navigability in order to claim title. At the same time, the power company was paying rent to the United States government. Is that the other party you're referring to, the power company? That's the PPL in the PPL Montana case. You're talking about the Montana case. The Montana case. All right. So the critical distinction, and I think Montana supports our position here on this, is that when you look at the question of navigability for title at statehood, if it's one of the later admitted states, then the title dispute is between the state and the federal government. That's why it's a federal question. I think Martin's lessee was articulating a principle about the original 13 states and the equal footing doctrine that said that navigability, the test for navigability, why it's a federal question. And I think, you know, That goes to the initial issue I asked about, which we seem to have gone all over the place on other topics. The threshold issue is whether or not this is a question that belongs to the federal court or is it a question that belongs to the state court. That's your initial issue. Yes. You say it belongs to the state court, but it sounds like today it belongs to the federal court. Well, Your Honor, we're delighted to be here to argue this point, but this has huge implications for the federal courts. Can you tell us whether this belongs in one court or the other? Yes, Your Honor. In about 25 minutes, I'd still like an answer to that question. I'd be happy to, Your Honor. It's a federal question for the newly created states, for the newly admitted states, because one, they were admitted under Article IV, Section 3 of the Constitution. That's the constitutional dimension. And secondly, the title dispute, you know, there's a finite point in time according to the Montana test, and that's, at statehood, was it navigable? If it wasn't navigable, as the court in Montana found, as the trial court in this case found, if it's non-navigable, the state doesn't have that title to it. And so in Montana... So we're determining what's navigable, what's non-navigable. Tell us why this case belongs to federal court or state court. Because in this case, in North Carolina and the other 12 states, there is no federal presence. The non-navigable... I mean, if that were the case, then the U.S. government should be, in this case, claiming title for the 45-mile segment... They do claim that regulation right under the Constitution. I'm sorry. They do claim the right to regulate navigable waters. Yes, that is correct. And the Supreme Court has indicated that the test for determining navigable waters for its regulatory powers under the Constitution is different from telling navigation for title. That's correct, Your Honor. And so the proposition you just said, the federal government does claim navigable waters and claims the right to regulate them directly under the Constitution, but I think Montana suggested, and Martin Selassie said, that the issue of what the states got when they were admitted under the Constitution is a federal question. And it is, Your Honor, because whatever waters they got that were navigable in Montana belong to the state of Montana. Yeah, you said the same in North Carolina. No, Your Honor. Well, if it's navigable... North Carolina got it. But if it's non-navigable, North Carolina would still own it absent some prior conveyance. We went through this whole discussion. I have the farmer with the stream. It's 1789, and you told me the farmer owned that land. If he has a proper conveyance. He had a proper conveyance. He settled it. He got it from the king or he got it from Sir Henry Smith or something, who was the grantee. But as we know, it's 1776. Land west of probably Salisbury was a territory or part of the state of North Carolina, but it was not settled. There weren't deeds. I mean, there were thousands of acres. In order to avoid that, the legislature in North Carolina chose to enact that Marketable Title Act. And the Marketable Title Act does avoid the necessity of going back to what you're talking about. So the question for title under non-navigable waters, you agreed is controlled by the Marketable Title Act. And in this case, Alcoa is shown title 100 years back. So that satisfies that. Then that leaves only one issue, which is the issue of navigability. If I may circle back here. Go ahead. The marketable title is a state law question. Adverse possession is a state law question. And navigability in this case should have been determined under the state law test for navigability. Which is different. Which is different, Your Honor, yes. North Carolina state law on navigability is different than the federal law. So the 15 states may have 13 different rules for navigability. For title. 37 states for title. And 37 states have a Montana. That's your opposition. I think it's probably 33 in West Virginia. West Virginia and Kentucky are in the same 13. 13 and 37, the new states. Yes, yes. So you're arguing that 13 states can have different rules determined by state law for navigability of rivers. 37 states are governed by the Montana case. That is correct. And therefore, these states are now unequal in their sovereign holdings under the Constitution. Because they're not on equal footing. I would submit they are equal in regard to navigable portions of rivers. And they're equal as to everything else. They're equal as to everything else. They have equal footing. They have two senators. And they're equal sovereignty as to everything else. I have yet to be able to get my short quote from you. But the point you're trying to make with this distinction is that because of that, you say that this is not a federal question. Correct. And we don't have jurisdiction. But we're sort of arguing it here like it's a federal question. The applicability of the Montana case and the Martins-Lessie case and the Constitution, who had what in 1789, sounds like federal questions. Your Honor, if I may, a big result. I think I asked that question at the very beginning. And you're still trying to get it. Because I see the answer to it. So I'm going to pass it. We've been interrupted. I try hard, Your Honor. I'm a desk. Yeah, you have a lot of assistants of sorts. So I understand your position to be that in the 13 original states, plus West Virginia, and maybe one or two others, the decision on this type of issue must be made in the state court. And the state court determines what constitutional prerogatives those states kept and what they surrendered when they entered the union. Is that right? That's correct, Your Honor. That answers at least the remand. Yes. But if we got it, I don't think it does completely. Because if we have federal question jurisdiction, because of the question of the applicability of these Montana principles and other things, other federal issues, and there are state law issues that arise under ERIE, we can apply the state law and decide the case, presumably just like the state court would decide the case. So we could, that is we the federal court system, could apply North Carolina law. Once we acquire jurisdiction, most of the time it's about diversity, we apply the law of the proper state and resolve the case on the state law issue. So the fact that there might be a state law question arise here doesn't mean that, I wouldn't think that means it necessarily has to be remanded back to the state court up in Wake County. Well, you're correct that there still has to be that federal question. The issue is there's no federal question. There's no diversity, there has to be a federal question. That's correct, correct. All right, I think we've gone through the red light and we're at the next intersection. Why don't we give you a break and then come back? Well, Mr. Green had the fun of coming up on rebuttal. Well, you can work that out with him. You can write him a note and tell him what you want to say. All right, thank you, Your Honor. We'll hear from Mrs. Murphy. I guess you think we've got it all wrong. I wouldn't necessarily say that. Thank you, Your Honor. May it please the court. You might be right if you think we're confused. Well, there's certainly a lot going on in this case, but I think what it all boils down to is navigability is a federal question for all 50 states in the union. That's clear starting with the Martin v. Waddell case, and it's clear in cases that come after that, I think in particular the Phillips case. Who owned the edge of the river in 1776? In 1776, probably like in 89, it depended on whether it was, you were talking about a navigable or a non-navigable stretch. If you had a non-navigable stretch, it was going to be owned by somebody who had gotten a grant along the river or however they'd acquired title, they were going to own the bed. Assuming there's no grant to the riverbed. The bank is not the river. That's right. We're talking about the riverbed. Under the common law that applied in North Carolina at the time, if you had title alongside the river and it was a non-navigable river, you took title to the threat of the stream. Exactly. Basically, what the federal rule has to do is tell you once North Carolina and all the other states join the union, do those same rules apply or does the state somehow have more? The North Carolina Constitution in 1776 says the state owns the water. Yes, I think... That's right. That's what it says. It's part of its sovereignty. The state constitution, which is still the state constitution, he says, that deprivation. Sure. There's an important distinction here between the waters and the bed of the river. This case is about the bed of the river. That's the bed. That's underneath the water. Exactly. Some of these deeds talk about the river bank and some of them talk about the threat of the river. Sure. That kind of thing. I understand that. You've got the non-navigable and navigable being specifically discussed by Judge Gilliam and saying in 1953 that North Carolina owns it all. For one thing, that case, it was a conceivably navigable area of river, so what was said about non-navigable rivers was really not relevant to the resolution of the case, but that's also not really a case where the dispute was about title. It was about the public trust rights in the water. As the Supreme Court explained in PPL Montana, whether the public can use the water is a very different question from who owns the bed underlying it. It came up to this court and we sustained it. That's right. The court sustained it on the principle of the water itself may be subject to public trust rights regardless of whether the bed is privately owned. There's just no dispute in this case about the water. This isn't a case where the state's not here saying  that the public doesn't have access to it. Under the federal constitution, the waters are clearly, can be regulated by the federal government under Commerce Clause. They clearly reach this type of water. They would clearly reach this water because the federal government regulatory authority. Exactly. You don't even need a navigable river for federal regulatory authority. So this case just isn't about the water. It's about the bed. We sustained them like a mud puddle up in Maryland one time and regulated that. Oil in the mud puddle. Federal regulatory authority is bad. Regulation is your retention under the Clean Water Act. Drain and all. That's right. You gotta speak better. That's right. No question about that. But that's not what we have here. That's right. You all have, you're talking about 45 miles of the Atkin River in North Carolina, 210 miles of it in North Carolina and you all got 45 miles of it. And three of that, according to the district court, is non-navigable and 42 of it's navigable. With all due respect, I don't think that's a fair reading of what the district court said here. He said it's quite clear that three miles is concededly non-navigable. He said perhaps further up there might be a better case if the state had tried to put on a case that distinguished different parts of the river. It didn't. So the court looked at the river segment as a whole. But if you look at the district court... The district court also said that parts above dropped steeply and had various traits, shoals and things. Exactly. And the testimony underlying that showed that there were 24 inches required above and that there was a drop of so much per 100 feet. So I don't think the district court ever found that it was navigable. Yeah. That's right. The shoals there over a 10 mile stretch that's well north... Did he find that 45 miles to be non-navigable? He found the 45 miles to be non-navigable. He didn't go mile by mile because the state never asked it to. The state to the contrary... You all said it was stipulated. You all said it was stipulated. Or he said it was stipulated. It was stipulated. But they say it wasn't. It's in the pretrial order under stipulation that the factual question before the judge... I don't think it says what you all said it said. I mean, the language of the stipulation is that the question being put to the court is whether the relevant segment was navigable at statehood. And we said repeatedly during trial to the district court judge, and we understand the question here to be, could you get from top to bottom of this stretch? The state never objected, never suggested it, wanted the court to consider anything else. But even if they had... It wasn't his burden to prove that. The district court ruled that it was the state's burden to prove and they haven't challenged that ruling on appeal. And that ruling is consistent with the federal law cases dealing with this. CPL Montana didn't really resolve the question about whose burden it is, but the federal law cases have consistently said that the party seeking to prove navigability bears the burden. So once you resolve the issue of where do you go to determine navigability and the burden of proof on the proponent, which in this case would be the state of North Carolina, it would be, in simplest terms, a failure of proof on their part to beat their burden of proof to show that this segment of the river was navigable. That's right, Your Honor. They had the burden here and I think the evidence here was just overwhelmingly one-sided. I don't think that it's a case where anything really turned all that much on who had the burden of proof, but it is correct that they had the burden and the evidence that we put on was not confined to the bottom three miles. Who had the burden of proving title? We had the burden of proving title, which we proved for almost all of... Judge Boyle said he wasn't going to look at deeds and everything. He wasn't going to do that. As he didn't need to under the Marketable Title Act because there was no dispute that Alcoa has had recorded deeds to 99% of this property for well longer than the 30 years... It's from the legislature of North Carolina? They have... You don't need deeds from the legislature if you're on a non-navigable river and by the time we were getting to title, it had already been determined that it was a non-navigable river. We have deeds that go squarely to the bed of the river. They're not just deeds that run alongside it. They've been recorded since at the latest, 1961. In many instances, long before that. What are the earliest deeds you have? We have deeds... I believe the earliest ones are around the 1910s, but those deeds were taken from private parties who already had deeds, so we weren't even getting it out of the state at that point. The state had already given it up before that. Why wouldn't you have to have the deed from the state as to any of it that hadn't been conveyed by the Crown before 1776? Well, because of the Marketable Title Act. Under the Marketable Title Act, the extreme purpose of that statute is that you only need 30 years of title. Most of North Carolina property owners would never be able to establish title if the state could come in, the whole western part of the state, and say it belongs to us. Precisely, that's why the Marketable Title Act was enacted. That's what they said in 1776 when they wrote the Constitution. They said that in 1776 when they wrote the Constitution. The state constitution says that in 1776. I'm sorry, what are you referring to that it says? It says the lands and the waters belong to the state. I think you've heard the state here concede today that's not correct as to a non-navigable river. The waters may have belonged to the state as waters are distinct from the bed, but when you're talking about the bed of a navigable river, if that property had conveyed before statehood, then it was going to belong to whoever it was conveyed to before statehood. They agreed with that. He did say he agreed with that. He did say he agreed with that. And the reason they have to agree with that is because of Martin v. Waddell. Because that was the question the Supreme Court was resolving as a federal question in that case. It wasn't going to resolve title issues in North Carolina. It was resolving title, it was adopting a uniform federal rule for the original state of New Jersey, which was an issue there, to determine whether a grant from the lower proprietor before statehood was still valid post-statehood in the state of New Jersey. And the Supreme Court said the way we're going to resolve that question is by determining, asking whether it was a navigable or a non-navigable river. So I think that underscores why navigability is and always has been a federal question, not by virtue of the equal footing doctrine. That's just a doctrine by virtue of which navigability applies to the later admitted states. Navigability was a federal question before the equal footing doctrine ever even came along because it's the federal rule that you need to apply to resolve disputes about pre- and post-statehood grants. So you don't need the equal footing doctrine, do you know what I'm saying? We just need navigability. Navigability is to stick, they're closely related doctrines. Oftentimes, navigability is referred to as the equal footing doctrine, but it's really the doctrine of navigability. Let me ask you this then. Let's set aside the equal footing doctrine. I understand your argument there. The Supreme Court substantively held in Montana that in determining navigability, you have to take into account portages and segments. Is that law applicable to all the states? Yes. That is the substantive rule, federal rule of navigability. It applies to all 50 states when determining the question of whether a river was navigable at state level. And in order to say that the equal footing doctrine only applied to 37 or the new states is a jurisdictional question that they addressed but did not limit the substance that they were holding. That's right. They made it clear that the substantive rule they were adopting was a federal rule. And this is clear in not just People of Montana. Isn't it pretty peculiar to have a Supreme Court decision applying to 37 states based on statehood under the Constitution and 13 states based on the original statehood? Absolutely, Your Honor, and I think it's even... So you're saying the Supreme Court can change the conditions in which one of the original states came into the Union? The Constitution determines the conditions in which the original states came into the Union. No, you're saying that the Supreme Court in interpreting the equal footing doctrine can change the conditions on which one of the 13 original states here in North Carolina entered the Union on November the 12th, 1789? Not at all, Your Honor. The premise of the equal footing doctrine is that the new states are equal to the original states. And North Carolina is not a new state. You cannot have a rule that renders new states equal to the original states if there's not a baseline rule for determining the sovereignty that the original states have. So you say they can change the property rights in North Carolina as they existed in 1789? In 1789, the Constitution determined what sovereign rights a state took or didn't take in order to enter the Union. None of the equal footing doctrines is a creation of a judiciary. Well, it's a constitutional rule. It's derived from the new state's provision, but if it's anything, it's federal common law created by the Supreme Court. I think it's federal constitutional law where the Supreme Court is recognizing that it's consistent with the admissions clause, with the Northwest Ordinance, with all of this history that the assumption and the understanding, particularly, and it really goes back to the original states because a lot of the early newly admitted states were being admitted with property that originally belonged to the original states. So part of the reason the new states have to have the same sovereign rights is because they're essentially being carved out of property that belonged to the original states. So the original states are saying, we wouldn't have given this up and let some other new state come in if they were all going to have different rules and we weren't going to have the same sovereign rules apply to any state that enters the Union. And those same sovereign rules in the 13 states plus the extras are after the states enter the Union. That determination of navigability is the same in all of those original states. Add to the question of what the state took at state level. Exactly. Right. There's later questions. If a state wants to convey away the best of its navigable rivers later, it's free to do so. That's a matter of state law. But when, as here, the state is saying, we owned this at statehood because it was navigable at statehood, that is quintessentially a federal question and has to be resolved under a substantive federal standard. And once you've reached that decision, so you have a federal question that determines what's navigable, what's non-navigable. And in this case, you come up with a non-navigable section of river. As I understand your position, you say that the Markable Tidal Act, a small chunk of adverse position, possession, determines that type as a matter of North Carolina. Right. At that point. That's correct. And that applies to the state and even, as I understand it, the state of Tuscany. You don't need adverse possession, do you? We need it for about 1% of the property. What was that 1%? So what happened was when Alcoa and its predecessors went to buy up all the deeds to all the different parcels. You've got a small gap. Exactly. You had a couple of grants that just didn't perfectly map on and they couldn't find anybody living who claimed to be the owner. So what you have are little pieces that are 8 or 10 acres. I think one of them is right in the middle of the river and nobody claimed to own them. So way back in the day, these pieces are right around, it's the High Rock Dam, which is the furthest north of the dam that was built in the 1920s. And right around there, you've got about 40 acres as to which the state, that Alcoa represented back in the 1956 Berk proceedings, that it possessed that little tiny triangle of property through adverse possession, not Markable Tidal. I'll take your word for that one. There's lots of law that adverse possession doesn't run against the state. In North Carolina, it clearly does run against the state unless you are dealing with basically a navigable river or other type of public thruway. So that's why, you know, as the judge recognized right from the outset in this case, everything... And that's by statute, not by common law. But that's not the case. It's a bit of a disputed issue. We think it's solely by statute. I think the state would tell you they think that that was the common law of the state. But in all events, what matters is that it only adds to the navigable rivers that you couldn't adversely possess the bed. So the district court judge recognized from the outset here that even the state law questions in this case really turned on navigability at state level. And it's the same with the Markable Tidal Act because, you know, the state has an argument where they say the Markable Tidal Act doesn't apply. Their argument is it doesn't apply because we took this land in a special sovereign capacity at statehood because it was navigable. So basically, you know, not only does the principal issue in the case turn entirely on this federal question of navigability, but navigability is really kind of the only disputed issue even as to the application of state law. And that's why once we got past navigability, this is a really straightforward case on the second set of motions for summary judgment because it was all but conceded, you know, that the Markable Tidal Act, we satisfied it as long as it applied. And the state has suggested... All but conceded. What do you mean by all but conceded? They conceded... You mean they stipulated? They conceded that... Is that your stipulation?  As I understand it, they conceded and, I mean, our deeds on the face cover the riverbed. So as I understand it, they don't dispute that our deeds cover the riverbed and would satisfy the Markable Tidal Act if the Markable Tidal Act applies. There's one deed out of 200 or so that runs to the river boundary. It doesn't explicitly include the bed of the river, but under settled North Carolina law, if you have a deed to a non-navigable river that's bounded by the river, then that includes the riverbed. But even that one, it's another one of these less than 1% of the property. So there wasn't a dispute about whether we could satisfy the Markable Tidal Act. The only dispute was about whether it should apply to the state. And clearly, on the face, it applies to the state in ordinary circumstances. The only dispute was whether there's a different... As I say, your deeds are void because this segment of the river is a navigable segment. Exactly. In the state's view, they've been quite candid. They believe that grants that were made in the 1880s are void ab initio. Setting aside the jurisdictional question, it comes down to, I gather, from both sides that the resolution of this case determines whether the district court got it right on determining that the segment was navigable or not. In other words, navigability really is a sole substantive question. I think that's right, Your Honor. I think that's really what everything turned down at the end of the day was navigability. And I think the district court clearly got that right and certainly didn't clearly err in the conclusion that the district court reached. They say they applied the wrong law on navigability. Well, that's because they believe it should be state law. They say that's a state law issue. And that, I think, underscores how... Isn't that right? Even the dispute about navigability is more a dispute about this federal versus state law question. Really, the disputed issue in the case is that. If they're right, that there's a distinction to be drawn between the original 13 and the new states and that North Carolina law applies, does that impact, in your view, the jurisdictional question? I actually think there'd still be federal jurisdiction because the way I would think about it is that the Constitution effectively adopted a state rule of decision as the original. I just don't think it can be that the Constitution is completely agnostic as to the rules that apply to the 13 states when they formed the union. I think the way you would think about that is that, in this case, you have a substantial federal question of what law the Constitution says should govern. And that is federal law, in our view. But even if it were state law, you'd still have that threshold of federal question. Are there state cases defining that ability? It's a complicated question. For purposes of title. That's the thing. I think you have to be very careful in state court decisions just like the federal court caution in Pueblo, Montana in first asking, what is this case about? Is it about title? Is it about public trust rights to use the water? Is it about regulatory authority? I think that one of the most helpful cases to understand it is the state versus Glenn. It's an 1859 case that both parties talk about in their brief session. It deals with the Yadkin River. And in holding the Yadkin River was non-negotiable in that it was susceptible to private ownership. The state, the North Carolina Supreme Court explained that there's basically three separate rules under state law. And one for title, whether title belongs to the state. One for whether the public has rights in the water even though title belongs to private parties. And then a third one where the public has nothing and it's completely private. But actually the state test. But did they ever address what constitutes navigability? Yeah. On the state's standard for title, it's actually, if anything, more stringent than the federal standard because the standard for determining whether the state claims title to the riverbed is that the river had to be navigable by seafaring vessels. So basically they said it's not enough that it's kind of a smaller boat. A canoe wouldn't do it. Exactly. And they say if a canoe could go on it, the public would have rights to the water. But the bed would be susceptible to private ownership. So if anything, the state rule is it has to be navigable by seafaring ships. That's what they have consistently said in the North Carolina Supreme Court when dealing with the specific question of title. So why are we debating this? I'll have to ask Mr. Green. We certainly think we would prevail no matter what standard applies. We think the case belongs in front of us. North Carolina doesn't agree with you on what the state law is on navigability. They say it's materially different. They do. And that it's properly applied here that this is navigable. They do. That's applying the North Carolina law makes it navigable. It's certainly a disputed issue between the parties. There's a dispute between you all and them on what the state law is. Absolutely. But they say their view of it would change the result. Absolutely. I think if you carefully read the state court opinion looking for the parts when they're talking about title as opposed to public rights in the water, I think it's clear that we have the better of that argument. But in all events, it's certainly a fair point that it is disputed by the parties and there was no need to resolve it here because the district court correctly recognized that the federal standard was the one that applied. All right. Thank you, Ms. Murphy. Thank you. Mr. Green or your designee? You could put Mr. Orr up here for you. Yes, I think. I'd like to answer a couple of your questions. Eddie Green, representing the state of North Carolina. And I really appreciate the dialogue with the court and trying as hard as I can to be helpful to the court. The question, the first question I think, was what did the state own in 1776? And it is this one, this one court of the case which was affirmed by this court. I just want to read from the opinion. Okay, well I'll read that to you as well. At least my take on it. The short answer is yes. But they owned everything in 1776. Not just the Navigable Springs, the Unnavigable Springs, but the farms and everything else except for the extension. You mean all the farms? Yes, except for the extension. And North Carolina couldn't come in and take the farms? No. If it had been previously conveyed by the Crown to Joe Smith in 1775 and 1776, the state didn't own that, Joe Smith owned it. But we can't show the records. You know, some of these old records are just not around. They can't be found anymore. I don't know when recordation at a courthouse was started. But North Carolina eliminated that debate. The debate is if you've held title for so many years, the Markwood Land Act will give you title. And the only issue then is you can't get title to certain lands that were sovereign lands or waters that were in the public trust. And it seems to me it's useless to figure out whether there was a conveyance in 1732 to... We're not talking about... We're talking about a state that came into the Union that had a lot of citizens, they owned property, they were farming the land, they were hunting. Yeah, well this case is enough about trying to divest those people of that ownership. Well, that stream was part of that land, a non-navigable stream three feet wide was part of that land and they got that land. Now the question is everybody seems to concede that the state reserved as a matter of sovereignty when it came into the Union the beds under navigable water. And  The question I have is are you suggesting that even if this 45 mile segment is non-navigable, you win? Or does the issue turn on navigability? Well, the presumption is under North Carolina law... No, I'm asking you to question that. Your position that if this 45 mile segment we find is non-navigable, do you win? And there's no public public trust interest in those... No, we're talking about the waters there. I'm talking about the bed river beds. Yes. And so the only way you win is if we conclude that the river is navigable. And the District Court got it wrong. The District Court got it wrong. Okay. Fair enough. That's where I thought the issue was. The Martin case, 1842, and I think it's helpful for the Court to look at how this equal footing theory doctrine created when it happened. But in 1842, when the quote, when the revolution took place, the people of each state became themselves sovereign, and in that character hold the absolute right to all their navigable waters and the soils under them subject only to the right since surrendered by the Constitution. Navigable waters. Yes. And while the state may have retained ownership under navigable waters, the position that your opponent takes, which would seem to be consistent with most of the Supreme Court cases, is it wasn't a surrender of ownership, but that the determination of what constituted navigable waters after 1789 then became a uniform federal determination. And we just don't think that's true. Well, why not? Well, 1845 is when the equal footing doctrine, I can tell, was first enunciated by the Supreme Court. What in what, LSE? In the Pollard-Lesse case. I think that's one of the first articles. What did they say there? What? They just said the state created out of federal territories right to the river beds, navigable river beds are in that state under the Equal Footing Doctrine. That's the Equal Footing Doctrine. They basically said as a matter of federal law. As a matter of federal law. Okay, so that actually is difficult for you to argue that it's not. It talked nothing about definition of navigation. It said this right and the Equal  Doctrine. And that was 1845. The next time that I could see the court had any real substantive discussion about it was they talked about the federal definition of navigability was 1922 in the Baruch case. The definition of navigability is a federal question. Why did the United States not  the original definition of navigability in the United States? The United States was always involved. You'll see the language in the Supreme Court opinion saying since the United States   involved in the United States  the federal question on definition of navigability is not part of the Equal Doctrine. It's a separate issue. It arises only in the United States  specifically the  States    a question on the definition of navigability in the United States. It is not part of the Equal Doctrine. It is not part of the Equal Doctrine. We got  use federal law to  this  specifically in the United States. It was not part of the Equal Doctrine but it was in the United States. We have to recognize that the law of Virginia will apply in determining whether these issues are not applicable here. The point is the court is there. It is not a universal 50 state rule. It is not a federal question. It is not applicable water. Oyster beds can be in navigable water but they don't need to be. You are saying this water has to be navigable.  is navigable. The North Carolina law is materially different. The test that was applied here. The main difference is both of them say it is navigable in fact. It was a vessel that could be used in commerce. That's basically what the definition of both the state and the federal. But until this litigation I understand what's on the record. The state of North Carolina had consistently for decades said represented to the federal regulatory body.          had been represented to the federal regulatory body, I don't think that would be true. I don't think that would be true. I   that  be true. I don't think that would be true. I don't think that was true. What they said was non legislation. I don't think that  true. I don't think  was true. I don't think that was true. To me it is true in my opinion. To me it  true       that was true. To me it is true in my opinion. To me it is true in my opinion. There seems to be a concession here. I don't know that I read this. Does there a public trust rights under the waters? I heard. You are going to take the position and the waters have to be distinct from the beds. The public trust in the waters, the recreational use, fishing rights, are part of the public trust. Waters are also relevant to navigation for purposes of the Congress clause. I don't think Montana governs all of the states. I think it must be read in the context of the case presented in the court. Same in Utah. Same in all the cases where this rule has been enunciated. It is not a single case from the United States Supreme Court or from any state. With respect, the navigable streams are held by the state. We're talking about navigability for the United States Supreme Court. It says that in a original 13 state that the federal definition of navigability will be applied in determining a title dispute between the states. It seems to me there's a federal rule being established that navigability applies to all the states. If it's a navigable stream. But the 13 states, West Virginia maybe as well, have their own definition. So you're saying that the 13 states can define navigability by themselves and the 37 states have to be decided by a Supreme Court. Because they became a state in a different way. I can tell the Supreme Court that we're going to limit its application to 37 states, a rule that they decided. The Supreme Court has jurisdiction over the entire United States. So this sounds like the perfect issue. Whoever wins or loses this for certiorari. I mean, it is a big opportunity. You can just try to pass the certiorari. We just need to make it a good record. I mean, if this court were to say that there's a 50-state rule for definition of navigability, it would be the first time that any court had said that. I don't understand how you bypassed Waddell's case. They were deciding that for the whole country. They were deciding the issue as to who had a title to the navigable stream. And they said it's a federal issue, determined by the  system. It's a federal issue for all the states. Since the revolution. The issue of navigability? I don't think so. The question is whether the Supreme Court can change what North Carolina got in 1789 when it joined up. It was a pretty close vote. There were a lot of people complaining about it. And they voted pretty close and decided to join and ratified the Constitution. There wouldn't have been one. If I can make two more points. They can change that 200 years later. You think that the Constitution took away North Carolina's rights when it admitted to the state? No, it did not. How about regulation? The 13 states have been adjudicating the issue of navigability of streams since we had the Constitution. States can apply federal laws. And they have created their own definitions. And they're all different. Well, how do we get equal footing then? Because equal footing does not apply. It does not work in reverse. Equal footing gives a new state the same ownership of the navigable streams as the original states. This sounds like Alice in Wonderland. On the basis of a rule applicable in the 13 states, we're going to make the 37 states equal. Now we say the 37 states are bound by what the 13 states were, but now we say the 13 states are unequal because they determined their own rules. Because they came in owning the state and they determined their own rules. Now the 13 states are equal because they determined their own rules. Now the 13 states are unequal because they determined their own rules. Now the  are unequal because they determined their own rules. Now the 13 states  equal because they determined their own rules. Now the 13 states are
judges: Paul V. Niemeyer, Robert B. King, G. Steven Agee